IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00166-RMR-NRN

JOHN HIBBS,

Plaintiff,

v.

RICK MERCER,
CHARISSE UPSHAW,
NICOLE SMITH,
MISTY ZADE, and
SIOBHAN BURTLOW,

Defendants.

---

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) (Dkt. #58)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court on an Order (Dkt. #59) from Judge Regina M. Rodriguez referring Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss"). (Dkt. #58.) Plaintiff John Hibbs responded to the Motion to Dismiss (Dkt. #63) and Defendant replied. (Dkt. #65.) The Court heard argument on October 14, 2022. (*See* Dkt. #67.) The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART.**

## PROCEDURAL HISTORY

Mr. Hibbs is an incarcerated inmate at the Fremont Correctional Facility ("FCF").
He initiated this civil rights suit pro se on January 19, 2021 asserting a 42 U.S.C. § 1983
claim against all Defendants for deliberate indifference to a serious medical need in
violation of the Eighth Amendment. Defendants moved to dismiss all claims against
them, arguing that the Mr. Hibbs had failed to state a claim and that they were entitled
to qualified immunity. (Dkt. #15.)

On January 23, 2022, Magistrate Judge Kathleen M. Tafoya[1] issued a Report
and Recommendation (Dkt. #28) recommending that Plaintiff's Eighth Amendment claim
against Defendant Mercer arising from an incident that occurred on February 17, 2019
proceed, but all other claims should be dismissed. Defendants did not object to Judge
Tafoya's recommendation. On January 18, 2022, Judge Regina M. Rodriguez accepted
and adopted Judge Tafoya's recommendation. (Dkt. #32.) Judge Rodriguez further
ordered that Mr. Hibbs could file an amended complaint.

Mr. Hibbs filed his Amended Complaint (Dkt. #40) on February 25, 2022, and
Defendants moved for more definite statement under Rule 12(e). (Dkt. #43.) The
undersigned granted that motion and ordered Mr. Hibbs to file a Second Amended
Complaint. (Dkt. #45) and extended the deadline for him to file to May 16, 2022. The
Court also granted a motion to appoint counsel for Mr. Hibbs. (Dkt. ## 45, 47–48.)

Counsel for Mr. Hibbs entered their appearance and filed a Second Amended
Complaint on July 21, 2022. The subject motion to dismiss followed.

---

[1] This matter was reassigned to the undersigned upon Judge Tafoya's
retirement. (*See* Dkt. #38).

## BACKGROUND[2]

On February 17, 2019, Mr. Hibbs reported to the FCF medical center declaring that he was suffering a medical emergency with symptoms of nausea, dizziness, sweating, chest pains, fever, and breathing issues. (Dkt. #52 at 1, ¶ 2.) He informed Defendant Mercer, a nurse at the medical center, that he had vomited blood earlier that morning and was unable to keep fluid down. (*Id.*; *see also id.* at 4, ¶ 19.) Mr. Hibbs says he was denied any treatment at that time; in fact, the interaction was not logged and Mr. Hibbs was not even assessed despite reporting concerning symptoms. (*Id.* at 4–5, ¶¶ 16, 20.) He further alleges that, at the time Defendant Mercer refused to provide any medical treatment, he was already aware that Mr. Hibbs suffered from several medical issues including chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, hypertension, hyperlipidemia, and chronic back pain. (*Id.* at 4, ¶ 17.) Importantly, to treat his chronic back pain, Mr. Hibbs was prescribed Mobic, a non-steroidal anti-inflammatory drug ("NSAID"). (*Id.* at 4, ¶ 17.)

After being denied any medical care, Mr. Hibbs returned to his cell and vomited blood again later that afternoon. (*Id.* at 5, ¶ 21.) That night, Mr. Hibbs' cellmate woke him for the nightly count. Mr. Hibbs vomited thick, black blood onto the wall, sink, and toilet. (*Id.,* ¶ 22.) Mr. Hibbs' cellmate informed security who requested that Mr. Hibbs exit his cell. When leaving his cell, Mr. Hibbs vomited "coffee ground emesis" and lost consciousness. (*Id.*, ¶ 22.)

---

[2] Allegations in this section are taken from Mr. Hibbs' Second Amended Complaint, filed June 16, 2022. (Dkt. #52.) All non-conclusory allegations are presumed true for the purposes of the motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Mr. Hibbs was taken to the hospital for emergency medical care. (*Id.*, ¶ 23.) After being seen in the emergency room at St. Thomas More Hospital, he was moved to Penrose-St. Francis Hospital where he received two esophagogastroduodenoscopies ("EGD"). (*Id.*, ¶ 24.) Hospital physicians diagnosed Mr. Hibbs with an upper gastrointestinal tract ("GI") bleed caused by severe esophagitis—a result of taking Mobic. (*Id.,* ¶¶ 24–25.)

To treat Mr. Hibbs' esophagitis, the hospital doctors placed a clip on his esophagus and gave him proton-pump inhibitors. (*Id.,* ¶ 25.) Mr. Hibbs remained in the hospital for five days. (*Id.,* ¶ 26.) Upon release, doctors prescribed a follow-up appointment and EGD. Doctors also instructed him to continue treating his esophagitis with prescribed proton-pump inhibitors. (*Id.*)

Mr. Hibbs returned to FCF and attempted to "seek medical treatment for further medical issues" stemming from his esophagitis. (*Id.* at 6, ¶ 27.) He claims that Defendant Mercer and Defendant Upshaw, another nurse, repeatedly denied him additional care until early April 2019. (*Id.* at ¶¶ 27–28.) However, even when Defendants Mercer and Upshaw did see him in April, they told Mr. Hibbs he did not require further treatment despite Mr. Hibbs complaints of further pain.

Mr. Hibbs claims that he has continued to seek medical treatment for over a year and is continuously turned away from the medical clinic. To date, FCF still has not permitted Mr. Hibbs to return to the hospital for a follow up EGD or to treat other painful medical issues resulting from his esophagitis. (*Id.* at ¶ 29.) He alleges that the denial of

treatment is, in part, due to a custom, policy, or practice of deliberately indifferent medical care at FCF and is attributable to Defendants Smith, Zade, and Burtlow.[3]

Based on these allegations, Mr. Hibbs asserts three claims for relief. First, he alleges that Defendant Mercer violated 42 U.S.C. § 1983 by being deliberately indifferent to his medical emergency on February 17, 2019. Second, he asserts that Defendants Mercer and Upshaw violated § 1983 because, since February 17, 2019, they have repeatedly refused to provide him treatment for his ongoing medical issues despite a prescribed course of treatment from hospital doctors.[4] Finally, Mr. Hibbs asserts a *Monell* claim against Defendants Smith, Zade, and Burtlow in their official capacities for failure to train and failure to supervise FCF medical care. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Defendants move to dismiss Mr. Hibbs second and third claims, but do not challenge Mr. Hibbs' first claim against Defendant Mercer based on the February 17, 2019 incident, which Judge Rodriguez has already allowed to proceed. Defendants also argue that Defendants Mercer and Hibbs are entitled to qualified immunity.

## LEGAL STANDARDS

### I. Failure to State a Claim Upon Which Relief Can be Granted

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v.*

---

[3] According to Mr. Hibbs, Defendant Smith was a "nurse III," Defendant Misty Zade was a health service administrator, and Defendant Burtlow was the warden at FCF. (*Id.* at 3, ¶¶ 11–13.)

[4] The first two claims are brought against the respective Defendants in their individual capacities.

*Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," he has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

## II. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To determine resolve a government official's qualified immunity claims, a court must "The plaintiff must "decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. A reviewing court has discretion to address either prong first. *Id.* at 236.

Raising a qualified immunity defense in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Sayed v. Virginia*, 744 F. App'x 542, 545–46 (10th Cir. 2018) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). "At the motion to dismiss

stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.* at 546 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Accordingly, to survive a motion to dismiss, a plaintiff "need 'only allege enough factual matter' to state a claim that is 'plausible on its face and provide fair notice to a defendant.'" *Id.* (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

## ANALYSIS

### I. Deliberate Indifference Claim Against Mercer and Upshaw for Refusing Medical Treatment After February 17, 2019

Mr. Hibbs' asserts a deliberate indifference claim against Defendants Mercer and Upshaw based on the allegations that these Defendants denied Mr. Hibbs any further medical treatment after he was discharged from the hospital—ignoring the hospital doctor's prescribed course of treatment and Mr. Hibbs' complaints of continued pain stemming from the February 17, 2019 incident. Defendants seek dismissal of this claim, arguing that Mr. Hibbs has failed to allege both the objective and subjective prongs of the deliberate indifference claim, and Defendants Mercer and Upshaw are entitled to qualified immunity.

Under the Eighth Amendment, prison officials can be liable for deliberate indifference to a serious medical need when "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). The test for liability of prison officials for deliberate indifference to an inmate's serious medical needs, in violation of the Eighth Amendment, involves both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). A plaintiff must first make non-conclusory allegations

7

that the deprivation at issue was in fact sufficiently serious. *Id.* A medical need is "sufficiently serious sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000)). "Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Id.* (citing *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). In addition, a delay in a prisoner's medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. *Id.* The substantial harm requirement for a deliberate indifference claim may be satisfied by showing "lifelong handicap, permanent loss, or considerable pain." *Id.* (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong of the test for deliberate indifference to an inmate's serious medical needs requires the plaintiff to present evidence (or, at the motion to dismiss stage, non-conclusory allegations) of the prison official's culpable state of mind. *Id.* at 751. The subjective component is satisfied if the accused official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. *Id.* A prison medical professional who serves as a "gatekeeper" for other medical personnel capable of treating a condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role. *Id.* at 757.

Deliberate indifference does not require a finding of express intent to harm. *Mata*, 427 F.3d at 752. Thus, a plaintiff alleging deliberate indifference to serious medical need not show (or allege) that a prison official acted or failed to act believing that harm actually would befall the inmate. It is enough that the official acted or failed to act despite knowledge of a substantial risk of serious harm. *Id.* This standard is akin to criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of serious harm. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836–38 (1994)).

The standard for deliberate indifference to an inmate's serious medical needs lies somewhere "between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 752. The task of deciding on a motion to dismiss whether an alleged constellation of facts constitutes deliberate indifference is made more difficult because "contemporary standards and opinions of the medical profession also are highly relevant in determining what constitutes deliberate indifference to medical care." *Id.* at 757–58 (citing *Howell v. Evans*, 922 F.2d 712, 719, *vacated after settlement by* 931 F.2d 711 (11th Cir. 1991)).

The level of intent required for deliberate indifference to an inmate's serious medical needs can be demonstrated through circumstantial evidence. *Id.* "Whether a prison official had the requisite knowledge of a substantial risk to the inmate's health or safety is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 542).

### A. Objective Prong

With respect to the objective prong, Defendants argue that Mr. Hibbs' complaints of continued abdominal pain do not suggest a sufficiently emergent or severe condition so obvious that a lay person would recognize the need for treatment, as would constitute a serious medical need. They also argue that there are no allegations that Mr. Hibbs' GI bleed continued after his hospitalization or that the esophagitis did not resolve. (Dkt. #58 at 7.)

The Court is not persuaded. The point of the objective prong of the deliberate indifference test is to "limit claims to significant, as opposed to trivial, suffering." *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014). Mr. Hibbs' allegations are not one of a malingering inmate who has run of the mill digestive issues or heartburn after eating. Mr. Hibbs' allegations, which the Court accepts as true at this stage, are that, after being hospitalized for what was ultimately diagnosed esophagitis and a GI tract bleed, he has continued to suffer abdominal pain related to his conditions. The same conditions that previously caused stomach pain and led to him vomiting significant amounts of blood, losing consciousness, being hospitalized for five days, and receiving an esophageal clip. The hospital doctors instructed Mr. Hibbs to return for a follow-up appointment and EGD and to continue treating his esophagitis with prescribed proton-pump inhibitors, but FCF staff have prevented him from receiving appropriate follow-up treatment. It is true that not every "twinge of pain" will give rise to an Eighth Amendment claim, but "substantial" pain will. Mr. Hibbs' allegations of severe abdominal pain following his emergent state on February 17, 2019 and subsequent hospitalization,

coupled with Plaintiff's complaints of months and years of untreated abdominal pain, fall on the actionable side of the line.

To hold otherwise creates a perverse incentive for Defendants and others like them to continue denying medical care to inmates who have been diagnosed with serious conditions. Indeed, Defendants reading of the law suggests they believe FCF medical staff can knowingly ignore a doctors' diagnosis and treatment plan—crafted after vomiting blood, losing consciousness, five days of hospitalization, and an esophageal clip—and continue to deny Mr. Hibbs any medical care until his condition becomes so severe that he again vomits blood. By the same token, prison officials could refuse to follow any post-operation medical care recommended by the doctor performing the surgery. The Constitution requires more of Defendants. *See Rutherford v. Med. Dep't of Dep't of Corr.*, 76 F. App'x 893, 902 (10th Cir. 2003) (concluding that inmate had stated deliberate indifference claim where he alleged that medical staff members disregarded complaints of pain, "delayed referring him to a doctor for medical care, allowed orders for referrals to expire, and failed to schedule prescribed tests, surgery, and follow-up care"); *Vigil v. Laurence*, 524 F. Supp. 3d 1120, 1129 (D. Colo. 2021) (finding that inmate had stated deliberate indifference claim where the defendant was aware of inmate's fractured arm and "nonetheless failed to provide follow-up care" even after receiving over 20 "sick call requests")

In light of the foregoing, the Court finds that Mr. Hibbs has sufficiently alleged a serious medical condition as diagnosed by a physician as mandating treatment. *Mata*, 427 F.3d at 751 (citations omitted); *Hunt v. Uphoff*, 199 F.3d 1220, 1223–24 (10th Cir. 1999) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Discovery and

medical testimony may ultimately defeat Mr. Hibbs' claims. But, at this stage of the proceedings, Mr. Hibbs plausibly alleges substantial pain and satisfies the objective prong of the deliberate indifference claim.

### B. Subjective Prong

The Court finds that Mr. Hibbs has also sufficiently alleged Defendants' culpable states of mind to satisfy the subjective prong. "The subjective prong is met if prison officials 'intentionally deny[ ] or delay[ ] access to medical care or intentionally interfere[] with the treatment once prescribed.'" *Redmond v. Crowther*, 882 F.3d 927, 940 (10th Cir. 2018) (quoting *Estelle*, 429 U.S. at 104–05). Defendants are correct that each Defendants alleged knowledge and conduct must be analyzed. *See Mata*, 427 F.3d at 755–61.

Defendants argue that, at most, Mr. Hibbs claims that they were merely negligent in diagnosing and treating his pain. "Where this sort of conduct is alleged, the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent." *Sealock*, 218 F.3d at 1211 (citing *Estelle*, 429 U.S. at 105–06)). But there is a second type of deliberate indifference, where prison officials "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* (citing *Ramos*, 639 F.2d at 575) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment")). This second type of deliberate indifference is relevant to this situation because Mr. Hibbs was *already diagnosed* with a serious

medical condition by hospital staff (after Defendant Mercer failed to provide him proper care on February 17, 2019), and Defendants prevented—and still prevent—Mr. Hibbs from returning to the hospital for recommended treatment despite his complaints of continued pain. Importantly, Mr. Hibbs has alleged that Defendants Mercer and Upshaw both knew of his chronic medical issues, the medical emergency that occurred on February 17, 2019, and that "Mr. Hibbs had been prescribed follow up treatment for those serious issues stemming from that incident." (Dkt. #52 at 10, ¶ 58.) Thus, Mr. Hibbs has plausibly alleged that Defendants Mercer and Upshaw were and are intentionally denying or delaying access to medical care or intentionally interfering with a prescribed treatment. *See Vigil*, 524 F. Supp. 3d at 1129 (D. Colo. 2021) (finding that inmate had plausibly alleged subjective prong by alleging the defendant was aware of inmate's fractured arm and "nonetheless failed to provide follow-up care" even after receiving over 20 "sick call requests"); *Hunt*, 199 F.3d at 1220 (reversing district court's dismissal where plaintiff had alleged that he was denied medication the hospital had prescribed for him and that certain medically-recommended procedures were not performed).

### C. Personal Participation

Finally, Defendants argue that Mr. Hibbs has failed to plausibly allege Mercer and Upshaw's personal participation in denying him medical care because all allegations against them are made in the collective.

The Court rejects this argument. Of course, Defendants are correct that liability under § 1983 requires personal participation in the unlawful acts. *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). But, in these circumstances, Rule 12(b)(6) does not

require the level of specificity Defendants demand. Relying on *Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013), Defendants argue that the undifferentiated allegations against Mercer and Upshaw are not sufficiently particularized. In *Pahls*, the district court had denied summary judgment on the question of qualified immunity and found that "law enforcement" had subjected plaintiffs to different treatment and harbored discriminatory intent. *Id.* at 1232. The Tenth Circuit reversed, explaining that the district court was required to analyze each individual defendant's involvement. *Id.*

Here, Mr. Hibbs does not broadly allege that some amorphous group of FCF medical personnel violated his rights. Instead, Mr. Hibbs alleged that two specific individual Defendants, Mercer and Upshaw, "repeatedly denied him further care" and "told [him] that he did not require further treatment. (Dkt. #52 at ¶¶ 27–28). Though he makes the allegations of the same conduct against both Defendants, it is plausible that both Defendants, on separate occasions, turned Mr. Hibbs away from the FCF medical center and refused to make appointments for follow up treatment. Though somewhat minimalist, these are allegations of "*specific* actions taken by *particular* defendants." *Pahls*, 718 F.3d 1210 (emphasis in original).

Plausible allegations of personal involvement serve two purposes: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense and avoiding ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring) (quoting *Twombly*, 550 U.S. at 557). Mr. Hibbs' allegations do not leave Mercer and Upshaw clueless as to the alleged misconduct. His claim is clear: Mercer and Upshaw denied him appropriate

14

medical care and prevented him from returning to the hospital for prescribed follow-up treatment. Discovery may reveal, for example, that only one of the individual Defendants, or neither, turned Mr. Hibbs' away from the FCF medical clinic. But at this stage, Mr. Hibbs' allegations are sufficient to survive a motion to dismiss.

### D. Qualified Immunity

With respect to qualified immunity, Defendants argue only that, because Mr. Hibbs has failed to state a claim, he has necessarily failed to allege a constitutional violation and qualified immunity applies. They did not argue that the constitutional right allegedly violated was not clearly established. Because the Court finds that Mr. Hibbs has plausibly alleged a deliberate indifference claim against Mercer and Upshaw for delay or denial of care, quality immunity does not apply at this time.

### III. *Monell* Claim for Failure to Train & Supervise

Defendants next argue that Mr. Hibbs' *Monell* allegations of failure to train or supervise fail to state a claim.[5] Mr. Hibbs' response did not address this argument. Nevertheless, the Court tests the sufficiency of the allegations in the Second Amended Complaint and finds that they fail to state a plausible *Monell* claim.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted). To state a claim for municipal liability, a plaintiff must plausibly allege the

---

[5] Mr. Hibbs' claim against Defendants Smith, Zade, and Burtlow is brought against them solely in their official capacity. (Dkt. #52 at 11.) The Court, therefore, does not consider whether these Defendants are individually liable.

existence of a municipal policy or custom and a causal link between the policy or

custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933

(10th Cir. 2015). He must also "show that the policy was enacted or maintained with

deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of*

*Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A municipality can be

liable under § 1983 only where the municipality itself causes the constitutional violation

at issue. *Monell*, 436 U.S. at 690–91. Thus, to prove a municipality is liable under §

1983 for the acts of one of its employees, a plaintiff must show (1) that a municipal

employee committed a constitutional violation and (2) that a municipal policy or custom

was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood,*

392 F.3d 410, 419 (10th Cir. 2004).

> An official policy or custom may take one of the following forms:
>
> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to
> constitute a custom or usage with the force of law; (3) the decisions of
> employees with final policymaking authority; (4) the ratification by such final
> policymakers of the decisions – and the basis for them – of subordinates to
> whom authority was delegated subject to these policymakers' review and
> approval; or (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the injuries that
> may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and

alteration marks omitted).

> Whatever species of policy or custom is alleged,
>
> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the
> municipality was the "moving force" behind the injury alleged. That is, a
> plaintiff must show that the municipal action was taken with the requisite
> degree of culpability and must demonstrate a direct causal link between the
> municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in

original).

Also, at least for claims of inadequate hiring, training, or other supervisory

practices, the Tenth Circuit has explained,

> a plaintiff "must demonstrate that the municipal action was taken with
> 'deliberate indifference' as to its known or obvious consequences." *Brown*,
> 520 U.S. at 407. "'Deliberate indifference is a stringent standard of fault,
> requiring proof that a municipal actor disregarded a known or obvious
> consequence of his action,'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011)
> (quoting *Brown*, 520 U.S. at 410) (internal quotation marks and brackets
> omitted), as "[a] less stringent standard of fault for a failure-to-train claim
> 'would result in de facto respondeat superior liability on municipalities,'" *id.*
> at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "The
> deliberate indifference standard may be satisfied when the municipality has
> actual or constructive notice that its action or failure to act is substantially
> certain to result in a constitutional violation, and it consciously or
> deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143
> F.3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be
> established by proving the existence of a pattern of tortious conduct." *Id.*
> Deliberate indifference "may be found absent a pattern of unconstitutional
> behavior" only in "a 'narrow range of circumstances'" where "a violation of
> federal rights is a 'highly predictable' or 'plainly obvious' consequence of a
> municipality's action or inaction." *Id.* at 1307–08 (quoting *Brown*, 520 U.S.
> at 409).

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019)

Guided by *Waller,* the Court finds that Mr. Hibbs has not plausibly alleged a

*Monelll* claim for failure to train or supervise. In his Second Amended Complaint, Mr.

Hibbs alleges that Defendants Zade, Smith, and Burtlow "maintain custom, policy, or

practice of deliberately indifferent medical care at the FCF medical clinic" and that FCF

medical staff, under the supervision of Zade, Smith, and Burtlow, routinely ignore and

delay providing all inmates, including Mr. Hibbs, with adequate and timely medical

care." (Dkt. #52 at 6, ¶ 30.) Mr. Hibbs also alleges that his injuries resulted because of this custom, policy, or practice. (*Id.*, ¶ 31.)

As evidence of this inadequate custom, practice, or policy, Mr. Hibbs cites the February 17, 2019 incident and subsequent failure to provide follow-up medical care. But Mr. Hibbs' allegations against Defendants Zade, Smith, and Burtlow are merely conclusory; there are no specific facts regarding how any purported supervisory deficiencies or inadequate training caused Mr. Hibbs' injuries. Further, there are no non-conclusory allegations of a pattern of unconstitutional behavior, nor allegations that the present case is one of those narrow circumstances where a violation of federal rights is an obvious consequence of Defendants Zade, Smith, and Burtlow's policies, practices, or customs. Thus, Mr. Hibbs' Second Amended Complaint fails to state a plausible claim on a failure to train or supervise theory of liability. *See Waller*, 932 F. 3d at 1289–1290. His *Monell* claim should therefore be dismissed.

Mr. Hibbs also references a 2005 CDOC Internal Health Care audit "uncovered a variety of quality of-care concerns including evidence of missed opportunities to provide care, failures to provide proper medication and monitoring and excessive and inappropriate use of NSAIDs." (*Id.* at ¶ 68). It is unclear from this allegation whether the audit concerned FCF specifically or all CDOC medical facilities. It is also unclear how a 2005 audit demonstrates that a policy, practice, or custom, created or enforced by Defendants Zade, Smith, and Burtlow, caused Mr. Hibbs' injuries. Further, the allegations do not explain how the audit of an unspecified facility or facilities put these Defendants on actual or constructive notice that their acts or omissions with respect to prescription of NSAIDs was substantially certain to result in a constitutional violation.

Finally, the Court notes that Mr. Hibbs does not allege a § 1983 claim based on the over-prescription of NSAIDs. He nowhere complains that he should not have been prescribed NSAIDS or that the FCF medical staff were deliberately indifferent in doing so. Instead, his § 1983 claims stem from failure to provide adequate treatment related to his GI bleed. Mr. Hibbs has failed to offer any clarification on the issues raised by Defendants because he did not address the *Monell* claim in his response.

## CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #58) be **GRANTED** with respect to Mr. Hibbs' *Monell* claim for failure to train or supervise, but **DENIED** with respect to his Eighth Amendment claim against Defendants Mercer and Upshaw.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*,

91 F.3d 1411, 1412–13 (10th Cir. 1996).

Date: December 2, 2022

_____
N. Reid Neureiter
United States Magistrate Judge